UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JAMES CAREY<br><br>Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Respondent. | Case No. CV 2:14-CV-000494-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Petitioner James Carey's Petition for Review (Dkt. 2), filed on November 19, 2014, seeking review of the Social Security Administration's final decision to deny him disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

This case has a complex procedural history. On September 2, 2009 Petitioner applied for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"), alleging a disability onset date of March 15, 2008 based on degenerative disc disease and mental impairments, namely anxiety and depression. (Petitioner's Brief, Dkt. 19 at 1). His claim was initially denied, and came before Administrative Law Judge ("ALJ") R.J. Payne on March 31, 2011. The ALJ issued an

**MEMORANDUM DECISION AND ORDER - 1**

unfavorable decision on April 15, 2011, finding no disability in Petitioner's degenerative disc disease and ruling that although Petitioner had a history of depression and anxiety, neither condition was severe. (AR 232-240).

Petitioner appealed the decision. While that appeal was pending, he also filed a second claim for disability insurance benefits. As to the second claim, Idaho Disability Determination Services opined on August 12, 2011 that he met the requirements of Listing 12.06, relating to anxiety disorders. (AR 692). This conclusion was based largely on a new psychological evaluation conducted by Dr. Carl Renfro, Ph.D in July of 2011, after the ALJ's initial decision to deny benefits. (AR 687-691). Then, on October 12, 2012 the Appeals Council consolidated both claims and remanded them the ALJ to conduct a new hearing to determine whether Petitioner's mental health conditions were at disabling levels, noting a discrepancy between the evidence relating to Petitioner's mental status that was before the ALJ and the conclusions of Dr. Renfro. (AR 324-327 & 245-248).

The second hearing before ALJ Payne occurred over two days – February 14 and July 5, 2013. (AR 118-171). Petitioner was present and represented by Mark Jones. Two Medical Experts (Drs. Marian Martin and Stephen Rubin) and Vocational Expert Diane Kramer testified, as did Petitioner. (*Id.*) The ALJ issued an unfavorable decision on July 19, 2013 (AR at 13-24), finding that Petitioner was not disabled. The Appeals Council denied Petitioner's request for review on October 22, 2014 (AR at 1-4), rendering the ALJ's decision the Commissioner's final decision.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner seeks judicial review, arguing that the the ALJ erred by failing to conclude that his mental conditions (primarily anxiety) and his back condition (degenerative disc disease) both were at a listing level of severity. Petitioner also argues that the ALJ failed to accord proper weight to the opinions of Dr. Renfro and his treating physician, Dr. Hugh Leedy. (Petitioner's Brief, Dkt. 19).

## II. STANDARD OF REVIEW

The Commissioner's decision will be upheld if supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence in the record.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y. of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v.*

**MEMORANDUM DECISION AND ORDER - 3**

*Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten,* 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

**MEMORANDUM DECISION AND ORDER - 4**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that the claimant had not engaged in SGA since March 15, 2008, the period for which disability benefits were sought. (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work

**MEMORANDUM DECISION AND ORDER - 5**

activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had one severe impairment: a degenerative disc disease of the lumbar spine. (AR 15). With respect to Petitioner's anxiety and depression, the ALJ found that these impairments caused no more than mild limitations in the areas of social functioning, concentration, pace and persistence, an no episodes of de-compensation of extended duration, they were non-severe under 20 C.F.R. § 404a(d)(1). (AR 16, 18).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner's degenerative disc disease did not meet the relevant requirements of listing 1.04 concerning disorders of the spine. Because the ALJ had concluded that the

**MEMORANDUM DECISION AND ORDER - 6**

Petitioner's mental impairments were non-severe, he did not evaluate whether they met or exceeded the relevant requirements of listings 12.04 and 12.06 concerning affective disorders and anxiety.

The fourth step requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded that Petitioner retained the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), and that the claim from Petitioner's back condition did not prevent him from remaining reasonably attentive and responsive in a work setting or from carrying out work assignments. (AR 18-19). At step four, the ALJ also found that Petitioner's statements about the intensity, persistence, and limiting effects of both his degenerative disc disease and mental impairments were not entirely credible. (AR 19-20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the

**MEMORANDUM DECISION AND ORDER - 7**

Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. The ALJ found, at step five, that although Petitioner was incapable of performing his past relevant work as a millwright, industrial truck operator, front-end loader, and overnight department head, he was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (AR 21-22).

B.     Analysis

   A.     **Petitioner's Degenerative Disc Disease Did Not Meet Listing 1.04A.**

Petitioner's first argues that his back condition–degenerative disc disease–met the severity requirements of listing 1.04A. He argues that for this reason alone, the ALJ erred in failing to find him disabled. The Court disagrees.

Summarized in its component parts, Listing 1.04A requires, at a minimum, the following elements:

> (1) a disorder of the spine, which may include, among other things, degenerative disc disease,
>
> (2) that results in the compromise of the nerve root or the spinal cord, that presents itself with:
>
> (3) evidence of nerve root compression characterized by the following:

**MEMORANDUM DECISION AND ORDER - 8**

      (a)    neuro-anatomic distribution of pain,
      (b)    limitation of motion of the spine,
      (c)    motor loss (defined as atrophy with associated muscle weakness or muscle weakness), *accompanied by* sensory or reflex loss, and
      (d)    a positive straight leg raising test (if there is involvement of the lower back)

20 C.F.R. § 1520.404, Subpart P, Appendix 1. Each element must be present or a claimant does not meet the listing. "Listed impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Kennedy v. Colvin,* 738 F.3d 1172 (9th Cir. 2013) (internal citations and quotations omitted). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.* In this case, however, the medical evidence does not contain any indication that Petitioner's degenerative disc disease included the component of motor loss *accompanied by* sensory or reflex loss.

      The primary evidence upon which Petitioner relies is an assessment conducted on March 1, 2011, by Physician Assistant Matthew Sprunt. (AR 655-659). Nowhere does this assessment mention "sensory loss" or "reflex changes," even though the form Mr. Sprunt filled out required him to identify positive signs of these deficits. (AR 656). Other records relating to Petitioner's visit with Mr. Sprunt also fail to mention any sensory loss or reflex changes. (AR 701). Similarly, an assessment dated October 27, 2010, in which Petitioner was seen for back pain and anxiety, contains negative findings in the area of

**MEMORANDUM DECISION AND ORDER - 9**

muscle weakness. (AR 696). Several months earlier, on May 6, 2010, Dr. Robert Fuller, a physician specializing in disorders of the spine, examined Petitioner and concluded that although "Mr. Carey has had LS spine surgery at some time in the past; except for a decrease in lumbar spine flexion my exam shows no residual problems." (AR 561-564).

Though not entirely clear from his briefing, Petitioner appears to argue that the missing evidence on motor loss arises from the fact that he walks with a cane and has been issued a handicapped license plate. (AR 796-97). Though this evidence may have some relevance to the requirements of listing 1.04, it does not reach to that end because there is no evidence that this alleged motor loss was accompanied by sensory loss or reflex loss. (AR 796-797). Far from being a mere technical deficiency, the absence of any medical evidence establishing that Petitioner suffered from motor loss accompanied by sensory or reflex loss is fatal to his claim that his back condition met listing 1.04A.[1] Given the other evidence in the record that the ALJ considered (namely, that Petitioner was sufficiently healthy that he was able to care for his young children during the time which he claimed to be disabled due to his back injury, and the absence of evidence that he regularly sought treatment for his back condition, and took no pain medication to alleviate it), the ALJ did not err in concluding that Petitioner's degenerative disc disease

---

[1] Petitioner also argues that the ALJ did not give the back injury sufficient attention in the 2013 decision to the question of whether his back injury was disabling. However, the remand from the Appeals Council instructed the ALJ to consider primarily issues related to Petitioner's anxiety disorder. (AR 247-248). Further, medical records related to Petitioner's degenerative disc disease from the period after the ALJ's initial decision in 2011 are scant, and do not demonstrate that this condition had changed materially since the Appeals Council's remand order.

**MEMORANDUM DECISION AND ORDER - 10**

was not disabling. (AR 18, 238).

## B. Anxiety Disorder

Petitioner next argues that the ALJ erred by concluding that Petitioner's anxiety disorder was not severe enough to meet the requirements of listing 12.06C. Related to this contention, Petitioner also argues that the ALJ erred in failing to accord controlling weight to the opinions of his examining physician, Dr. Carl Renfro. He also argues that the ALJ's decision that his mental condition was not disabling was fundamentally flawed because it was contrary to the determination of Disability Determination Services (DDS) that Petitioner met the requirements of Listing 12.06. Because this last argument is a threshold issue, the Court will address it first.

### 1. The ALJ Was Not Bound by the DDS Determination

The ALJ was not bound by DDS determination that Petitioner met the requirements of Listing 12.06. In its Order of Remand, the Appeals Council itself seemed to question the adequacy of the DDS decision, noting the discrepancies between the information that DDS had reviewed (mainly the report of Dr. Renfro) and the medical evidence from a slightly earlier time frame that had been before the ALJ. Specifically, the Appeals Council stated:

> In contrast to the findings and conclusions contained in Dr. Renfro's report, the record shows that you have not received any recent mental health care for anxiety or depression, and you have acknowledged that you are responsible for family child care while your wife is at work. Furthermore, when seen for consultative examination in June 2010 with Dr. Carl Haugen, PhD, this physician noted that you did not demonstrate any significant impairment during the mental health status examination, and it appeared

**MEMORANDUM DECISION AND ORDER - 11**

>your major issues were physical or perhaps neurological. The appeals Council also notes that during the prior hearing in March 2011, Dr. Ronald Klein, PH.D., the medical expert present at the hearing, evaluated your mental impairments under Listing s 12.04 and 12.06, concluding that you did not have a severe mental impairment.
>
>Accordingly, we plan to remand your case to the Administrative Law Judge for further proceedings and to issue a new decision that addresses all your claims. Upon remand, we will instruct the Administrative Law Judge to obtain updated treatment records, and if warranted, to obtain evidence form a medical expert to clarify the nature and severity of your mental impairments. The Administrative Law Judge will also be instructed to reconsider your maximum residual functional capacity for the entire period at issue and, if warranted, to obtain supplemental evidence from a vocational expert regarding the extent to which your limitations affect your ability to perform jobs existing in significant numbers in the national economy.

(AR 326).

Far from affirming the conclusion of Disability Determination Services that Petitioner had met requirements of Listing 12.06, the Appeals Council remand decision left it to the ALJ to determine whether Petitioner was disabled due to mental impairments at all points during the relevant time frame. (AR 159). There was no legal error in this case simply because the ALJ ultimately reached a different conclusion on the subject than did Disability Determination Services.

### 2. The ALJ Did Not Err By Deciding to Accord Little Weight to the Opinions of Dr. Renfro

Dr. Renfro examined Petitioner twice, in 2011 and in 2013. The first exam occurred on July 13, 2011, in connection with the new application for disability benefits that Petitioner had filed after the ALJ had issued his first decision. Dr. Renfro's report

**MEMORANDUM DECISION AND ORDER - 12**

from that exam states:

> [Mr. Carey's] developmental history is suggestive of an ongoing proneness and vulnerability to social stressors, leading to the experience of ongoing anxiety. His condition appears to be further confounded by the consequences of a previous low back injury diminishing his quality of life and ability to engage in physical activity. . . . Within the clinical setting, he conveys patters of behavior which suggest difficulty sustaining fluid and effective social interaction and also indicates the disruptive influence of anxiety upon a variety of cognitive functions including attention, concentration, short-term memory, working memory and elements of verbal processing. His condition is further complicated by elements of mild to moderate depression which further contributes to a sense of immobilization and difficulty with problem solving. The extent and severity of his affectively based difficulties would greatly impair his ability to successfully meet either the performance or social demands typical within the work area.

(AR 690-691). Dr. Renfro also assigned Petitioner with a Global Assessment Function or "GAF" Score of 45 to 50 for that day. (AR 691).[2]

Petitioner saw Dr. Renfro again in July of 2013, after the Appeals Council remand. Dr. Renfro's conclusions from this second visit are similar to those from the initial visit. (AR 761-766). Dr. Renfro also administered the Wechsler Adult Intelligence Scale test during the second visit, the results of which indicated that Petitioner's Full Scale IQ score was in the tenth percentile range, a result described as indicative of "borderline" mental

---

[2] A GAF score represent's a clinician's judgment as to a patient's overall level of psychological, social, and occupational functioning, without regard to any possible physical impairments. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000). A GAF score in the range of 41–50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning indicative of an individual who would be unable to keep a job. *Id*. However, as the ALJ noted in his second decision dated July 19, 2013, GAF scores were eliminated in the Fifth Edition of the DSM (DSM-V) issued in June of 2013. (AR 16).

**MEMORANDUM DECISION AND ORDER - 13**

functionality. (*Id*.) In his "summary and conclusions," Dr. Renfro stated that "[Petitioner's] symptoms of anxiety have led to an escalating pattern of social withdrawal, avoidance, and isolation which further restrict his general social coping capacities. His current level of social and adaptive functioning would greatly interfere with his ability to meet either the performance or social demands of his previous vocational placements. His prognosis for eventual therapeutic improvement is quite guarded." (AR 765-66).

While these conclusions admittedly painted a very grim picture of Petitioner's overall level of mental functioning, as the Appeals Council itself noted, they were not necessarily consistent with other evidence in the record, particularly with the evidence placed before the ALJ at the time of his initial decision. In particular, Petitioner had been examined by Dr. Carl Haugen on June 7, 2010, a little more than a year prior to the first examination by Dr. Renfro. Dr. Haugen noted that Petitioner did display some symptoms of anxiety and depression during this examination, but Dr. Haugen ultimately concluded that "[Petitioner] did not demonstrate any significant impairment in his mental status. Though he struggles with anxiety and depression, it would seem his major issues are physical or perhaps neurological." (AR 654). Dr. Stephen Rubin, the medical expert who testified at the post-remand hearing, opined regarding Petitioner's mental impairments in the context of the listings for both anxiety and affective disorders and concluded that these impairments, though they were clearly "of concern," were not severe according to the assessments of severity used in disability evaluations. (AR 121-122). On cross-

**MEMORANDUM DECISION AND ORDER - 14**

examination, Petitioner's attorney asked Dr. Rubin why his opinion as to the ultimate issue of disability differed from Dr. Renfro's. Dr. Rubin gave the following answer:

> Well, it's kind of interesting. I mean, if you go back and take a look at the GAF rating, which is no longer used, when you get to 45 to 50, I mean, you get a person who is almost nonfunctional. And there's nobody else who suggest that. Only Dr. Renfro. And now, maybe on that day the client was not doing well at all, but he was certainly functioning. He was on medication, I believe, at that time. He was having pain from his lower back. He was still taking care of his active functioning. He was still participating in his marriage and his family. . . . But I have to look at the whole listing, and Dr. Renfro, who I think has seen him twice, if I'm not mistaken, has seen something quite different than other people have seen. . . But when I see that very low GAF rating, for whatever reason, it just didn't fit with the rest of the record.

AR 123-124.

Dr. Rubin also testified that the diagnostic IQ tests that Dr. Renfro performed suggested a picture of borderline functionality that did not fit in with the record as a whole. (AR 24). Dr. Marian Martin, another psychologist who testified at the second hearing, gave testimony similar to Dr. Rubin's. Specifically, she addressed whether Petitioner's diagnoses of depression and generalized anxiety disorder met the listing criteria for listings 12.04 and 12.06 and concluded that they did not. (AR 162-163). She also testified that Petitioner would benefit from a job that was simple and repetitive and required limited contact with the public, but even subject to those parameters, he would still be able to maintain full-time work on a regular and continuous basis. (AR 164).

In Social Security cases, both ALJs and courts reviewing an ALJ decision "employ a hierarchy of deference to medical opinions depending on the nature of the services

**MEMORANDUM DECISION AND ORDER - 15**

provided." *Ryan v. Comm'r. of Soc. Sec. Admin,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing standard in dissent); *See also, Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). This hierarchy distinguishes among three types of physicians: those who treat the claimant, those who examine the claimant but do not treat him, and those who neither examine nor treat but simply review the medical evidence prepared by others and provide opinions as to the presence or absence of functional limitations. Although this hierarchy requires that an ALJ should "generally give less weight to the conclusion of a non-examining expert than the conclusion of an examining physician, a non-examining medical expert's opinion may constitute substantial evidence [in support of the ALJ's decision] when it is consistent with other independent evidence in the record. *Marino v. Astrue,* 2012 WL 6044717 at * 5 (W.D. Wash. 2012). "Substantial evidence that can support the conflicting opinion of a non-examining medical advisor can include laboratory test results, contrary reports from examining physicians, and inconsistent testimony from the plaintiff." *Id.*

At the time the ALJ issued his decision, the medical evidence on the issue of Petitioner's mental impairments (excluding the testifying medical experts who did not examine Petitioner) consisted largely of two sets of opinions: those of Dr. Haugen, who concluded that there was nothing that would prevent Petitioner from holding down a job, and Dr. Renfro, who concluded that Petitioner suffered from disabling levels of anxiety. It was the ALJ's responsibility to resolve conflicts in the medical testimony. *Shalala,* 53

**MEMORANDUM DECISION AND ORDER - 16**

F.3d at 1039. Especially in light of Dr. Rubin's testimony that Dr. Renfro's opinions did not comport with the rest of the medical evidence, the Court cannot say that the ALJ erred in deciding to afford greater weight to the conclusions of Dr. Haugen.[3] For these reasons, at the time the ALJ issued his decision, the record contained substantial evidence supporting his conclusion that Petitioner's mental impairments were not disabling.

### 3. New Evidence Considered By the Appeals Council Warrants a Remand.

The Court must also consider whether evidence obtained by Petitioner's counsel after the ALJ's decision warrants a remand. This new evidence consists primarily of a letter, dated August 1, 2013, that was provided to Petitioner's counsel by Petitioner's treating provider, Dr. Hugh Leedy, shortly after the ALJ issued his decision finding Petitioner not to be disabled. In this letter, Dr. Leedy states:

> As a result of not being able to work and provide for his family, [Petitioner] has developed an anxiety disorder and depression. He has been treated with medications as well as ongoing psychotherapy with a behavioral health provider at Kanisku Health Services. In spite of these treatments, and due to his original injury and the effects it has caused to his life, he is now not employable due not only to his back condition, but also due to his mental and emotional condition.

---

[3] During the initial post-remand hearing, the ALJ and Dr. Martin discussed the advisability of obtaining additional testing to provide a more complete picture of Petitioner's psychological presentation. At that time, the ALJ informed Petitioner's attorney that obtaining a third provider (other than Dr. Haugen or Dr. Renfro) would be advisable. (AR 167-168). However, Petitioner elected to return to Dr. Renfro rather than seek out a third party opinion. For this reason, the additional testing that was conducted after the hearing was continued did little to resolve the conflict between Dr. Renfro's opinions and those of Dr. Haugen.

**MEMORANDUM DECISION AND ORDER - 17**

(AR 804). Even though this letter and the related medical records were not part of the record before the ALJ, the Appeals Council elected to consider this evidence in deciding whether to grant review of the ALJ's decision. Therefore, this Court must consider it as well. "When the Appeals Council considers new evidence, this new evidence becomes part of the record, and the district court must consider it in deciding whether the ALJ's decision is supported by substantial evidence." *Brewes v. Commissioner of Soc. Sec. Admin.,* 683 F.3d 1157 (9th Cir. 2012).[4]

The Commissioner argues that this new evidence would not change the ALJ's decision and therefore does not justify a remand. The Commissioner contends that Dr. Leedy's opinions are very general in nature and that an ALJ is not bound by a provider's opinions on the ultimate issue of disability. It also argues that Dr. Leedy notes elsewhere in his records that Petitioner has experienced no memory loss, and has normal insight, normal judgment, and normal attention span and concentration, opinions which cut against a claim that Petitioner is completely disabled due to his anxiety.

While the Commissioner's arguments may raise legitimate questions about the weight that ought to be given to Dr. Leedy's opinions, the Court does not share the

---

[4] Despite the fact that Petitioner had been a patient of Dr. Leedy's since 2012, his counsel did not see fit to solicit Dr. Leedy's opinions on the issue of disability until August of 2013, two weeks after the ALJ's unfavorable decision. Presumably, that decision was based upon counsel's belief that Dr. Leedy's evidence did not support a finding of disability. Therefore, were this Court tasked with deciding whether good cause exists to include this evidence in the record under the standards articulated in 42 U.S.C § 405(g), it might well conclude that good cause does *not* exist. However, under *Brewes,* the Court is bound to consider Dr. Leedy's opinions as part of the overall administrative record.

**MEMORANDUM DECISION AND ORDER - 18**

government's certainty that the ALJ would necessarily have discounted them altogether. Though very generalized in nature, Dr. Leedy's opinions do lend some support to the notion that Petitioner's mental health deficits, and in particular his anxiety, may be progressive conditions that have become increasingly disabling over time. In deciding that these conditions were *not* at a disabling level, the ALJ gave significant weight to the testimony of the medical expert, Dr. Rubin. Dr. Rubin, in turn, relied heavily on the fact that at the time of the second hearing, Dr. Renfro was the only provider who had concluded that Petitioner's anxiety and depression were at disabling levels. The anomalous nature of Dr. Renfro's opinions was a primary reason for the ALJ's decision to reject those opinions; hence, it is potentially significant that another provider (who is also a treating provider) has more recently concluded that the Petitioner's mental conditions are in fact disabling. This, together with the fact that the ALJ concluded at step two that Petitioner's mental conditions were not severe, suggests that the new evidence could change the complexion of this case, and that in that setting a remand order is warranted. This is not to say that Dr. Leedy's opinions may not be subject to challenge in a number of different ways, only that the ALJ is best positioned to weigh the strength of the evidence.

For all these reasons, the Court concludes that the appropriate remedy is a remand under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ may consider the new evidence from Dr. Leedy and conduct any other proceedings necessary to determine

**MEMORANDUM DECISION AND ORDER - 19**

whether Petitioner has met his burden of proof with respect to showing that his mental impairments are disabling. Though the Court has concluded that Petitioner's degenerative disc disease does not meet the requirements of Listing 1.04, this Order shall not prevent the ALJ from considering whether the back condition is disabling, either alone or in combination with Petitioner's other impairments.

Finally, because the ALJ did not err in his assessment of the evidence that was before him at the time he issued the denial of benefits, a remand to a new ALJ is not warranted.

For all the foregoing reasons, the case is hereby remanded to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**SO ORDERED.**

DATED: **May 20, 2016**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**